**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| RODERICK D. MOSLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.: 25 – cv – <u>4015</u> |
| v. | ) | |
| | ) | **COMPLAINT** |
| MUSIC TIMES, LLC, | ) | |
| | ) | |
| Defendant. | ) | **TRIAL BY JURY DEMANED** |
| | ) | |

Plaintiff, Roderick D. Mosley ("Mosley" or "Plaintiff"), by and through his undersigned counsel, hereby states his complaint for damages against Music Times, LLC ("Music Times" or "Defendant") as follows:

## INTRODUCTION

1.      This Complaint arises from an article published by Music Times on or about May 15, 2024 ("Article"), wherein Music Times falsely and defamatorily used Mr. Mosley's image and likeness in connection with allegations of sex trafficking, forced or coerced "relations" with sex workers, unwanted sexual advances and groping, and other serious illegal activity involving Sean Combs a/k/a "Puff Daddy" a/k/a "P. Diddy" a/k/a "Diddy" a/k/a "Love" ("Combs").  A true and correct copy of the Article is annexed hereto as <u>Exhibit 1</u>.

2.      The Article was published during the height of controversy surrounding Combs—a prominent record producer, music executive, and hip-hop

1

mogul—and allegations of sexual misconduct by several accusers, including those that work in the music industry.

3.    The Article purports to summarize the civil lawsuit and subsequent legal proceedings initiated by Rodney "Lil Rod" Jones, Jr. against Combs.

4.    However, the Article does not identify Rodney Jones, Jr.—it simply refers to the subject as "Lil Rod" or "Rod," while falsely and defamatorily using the image and likeness of Mr. Mosley, who is a private individual and who is not Rodney Jones, Jr.

5.    While among family, friends, colleagues, and acquaintances in his community, Mr. Mosley is affectionately known as "Lil Rod" or "Rod," Mr. Mosley is **_not_** the "Lil Rod" or "Rod" described in the Article.

6.    The Article, which falsely and defamatorily used Mr. Mosley's image and likeness, conveys to the average reader that Mr. Mosley—not Rodney Jones, Jr.—engaged or was involved in untoward and extremely disturbing and illegal sexual conduct involving men, women, and minors alongside or at the direction of Combs.

7.    To the average reader, the Article also constitutes false light invasion of privacy as to Mr. Mosley.

8.    Indeed, Mr. Mosley's image and likeness is the ***sole*** image used in the Article, which conveys to the average reader that the Article is about Mr. Mosley—not Rodney Jones, Jr.

9.    Music Times and its editors and writers purport to be committed to certain editorial standards, by "performing a high level of due diligence on the credibility of our sources" and being "honest" when it falls short of its editorial standards.[1]

10.    Music Times acknowledges and recognizes the importance of honest and accurate reporting in our society, as no publisher has an unfettered right or privilege under the First Amendment to injure the reputations of private individuals by publishing false and defamatory statements against them.

11.    Yet, and in abandoning its journalistic integrity in favor of profit, clicks, and views, Music Times and its editors and writers negligently and recklessly published the Article that falsely and defamatorily used Mr. Mosley's image and likeness and/or placed him in a false light.

12.    Moreover, Music Times was not honest about its false and defamatory publication of the Article; instead, Music Times quietly removed the Article altogether from its website without issuing any formal retraction or apology to Mr.

---

[1] *See* https://www.musictimes.com/about-us (last visited May 13, 2025).

3

Mosley in the same manner it published the Article that falsely and defamatorily used his image and likeness and/or placed him in a false light.

13.     Irrespective of Music Times's sheepish efforts to conceal its unlawful conduct, the Article had already damaged Mr. Mosley's character and reputation beyond repair.

14.     As a result of the conduct described herein, Music Times is liable to Mr. Mosley for actionable defamation and/or false light invasion of privacy for which it must be held legally accountable.

## PARTIES

15.     Mr. Mosley is an individual who resides in Fulton County, Georgia.

16.     On information and belief, Music Times is an online media company operating at www.musictimes.com.

17.     On information and belief, Music Times is a limited liability company incorporated in New York with its principal place of business in New York, New York.

18.     Music Times is liable for the actions of its editors and writers, including but not limited to Wendy Geller and Liz Foster.

## JURISDICTION AND VENUE

19.     Mr. Mosley is a citizen of the State of Georgia for purposes of diversity jurisdiction under 28 U.S.C. § 1332.

20.     On information and belief, Music Times is a citizen of the State of New York for purposes of diversity jurisdiction under 28 U.S.C. § 1332.

21.     This Court has original subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1332 as there exists complete diversity of citizenship between Mr. Mosley and Music Times and the amount in controversy exceeds $75,000, exclusive of interest and costs.

22.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1).

## FACTUAL BACKGROUND

### Mr. Mosley

23.     Mr. Mosley is a father of five biological children and two stepchildren by marriage, including five daughters and two sons, and a grandfather of seven.

24.     Mr. Mosley is also a recently married man of two years.

25.     Mr. Mosley is a lifelong Georgian, growing up in Atlanta, and has never lived anywhere else.

26.     For his entire career, Mr. Mosley has worked in the music industry, exclusively with hip-hop artists in Atlanta.

27.     Most notably, he has spent his entire career working with one of the most successful and critically acclaimed hip-hop groups of all time.

28.     Mr. Mosley is also a personal trainer with twelve years in the business, while owning his own business for the last eight years.

29.     Through his work in the hip-hop industry, he has developed clientele for his personal training business and exclusively trains celebrity clients.

30.     Outside of his professional work, Mr. Mosley and his wife give back to their community in meaningful ways, including sponsoring an annual dinner for the top 25% of the high school graduates from Benjamin Banneker High School in College Park, Georgia, sponsoring prom dresses and tuxedos for high school students in need, hosting back-to-school drives for students to prepare them for the upcoming school year, and holiday food drives during Thanksgiving and Christmas.

31.     While Mr. Mosley has met Combs in passing within his work in the music industry, they do not know each other personally.

32.     Prior to the events that led up to the Article, Mr. Mosley did not know, nor has he ever heard of, Rodney "Lil Rod" Jones, Jr. within the music industry or otherwise.

**Rodney "Lil Rod" Jones, Jr.'s Allegations Against Combs in Civil Lawsuit**

33.     On February 26, 2024, Rodney Jones, Jr. filed a civil lawsuit against Combs in the United States District Court for the Southern District of New York. *See Rodney Jones v. Sean Combs, et al.*, Case No. 1:24-cv-01457 (S.D.N.Y. Feb. 26, 2024) (hereinafter, the "Jones Complaint").

34.    In the Jones Complaint, Mr. Jones identifies himself as an "American artist and music producer," originally from Chicago, Illinois and residing in the states of New York and California.  *See* Jones Compl. at ¶¶ 5, 16.

35.    Throughout the duration of his music career, and until his work with Combs beginning in August 2022, Mr. Jones worked primarily in the music scene centrally located in the southside of Chicago.  *Id.* at ¶¶ 18–20.

36.    Mr. Jones allegedly began working with Combs on his latest album, "The Love Album: Off the Grid," ("Love Album") between September 2022 and November 2023 as a producer.  *Id.* at ¶¶ 20, 22.

37.    Mr. Jones is credited as a named producer on the Love Album, either under his given name, Rodney "Lil Rod" Jones, or his performer name, "Lil Rod Madeit."  *Id.* at ¶ 117.

38.    Mr. Jones is also known as @lilrodmadeit on social media platforms, such as Instagram where Mr. Jones has garnered over 30,000 followers, and, importantly, where his image and likeness is on full display.[2]

39.    Critically, clear pictures of Mr. Jones's image and likeness—some with Combs—are displayed in several portions of the Jones Complaint.  *See* Jones Compl. at ¶¶ 17, 80, 114.

---

[2] *See* https://www.instagram.com/lilrodmadeit (last visited May 13, 2025).

40.     During his work on the Love Album, Mr. Jones alleged *inter alia* Combs forced him to make false statements to law enforcement regarding a shooting that occurred at a studio involving Combs and his son. *Id.* at ¶ 29–52.

41.     Mr. Jones further alleged he was subject to "constant and unsolicited and unauthorized groping and touching of his anus by Mr. Combs," was forced to view Combs in the nude, and was groomed "into accepting a homosexual relationship" with Combs and others in exchange for promises of professional success. *Id.* at ¶¶ 53–73.

42.     Mr. Jones further alleged Combs groomed Mr. Jones and/or allowed others, including male celebrities, to sexually assault Mr. Jones. *Id.* at ¶¶ 74–80, 109–114.

43.     On another occasion, Mr. Jones alleged being unknowingly drugged by Combs and awakening in bed the following morning naked with Combs and two sex workers. *Id.* at ¶ 84.

44.     Mr. Jones further alleged Combs forced him to "solicit sex workers and perform sex acts to the pleasure of Mr. Combs," including providing Mr. Jones with paraphernalia closely associated with Combs's brand and record label to signal to sex workers of Combs's presence and intent to recruit them for sex. *Id.* at ¶¶ 81–83, 88–97.

45.     Mr. Jones alleged Combs used his power and influence, including promises of monetary gain, expensive recording equipment, ownership of luxury real estate, and access to record label executives, to intimidate and force Mr. Jones into soliciting and sleeping with sex workers despite Mr. Jones's desire not to do so.  *Id.* at ¶¶ 81–83, 88–97.

46.     On another occasion, and during a "listening party" for the Love Album, Combs allegedly required Mr. Jones to again solicit sex workers for the event.  This time, in addition to sex workers appearing at the listening party, several minors under the age of sixteen were present and all consumed liquor laced with ecstasy at Combs's direction.  *Id.* at ¶¶ 98–108.

47.     Although Mr. Jones allegedly attempted to leave the listening party, Combs forced him to stay, taking away his car keys, and forced Mr. Jones to consume liquor laced with ecstasy.  Mr. Jones allegedly passed out and woke up the next morning with a sex worker sleeping next to him.  *Id.*

48.     Music Times reported on the filing of the Jones Complaint and the allegations described therein on February 27, 2024—the day after it was filed in federal court—presumably, after reviewing the Jones Complaint.[3]

---

[3] *See* https://www.musictimes.com/articles/100991/20240227/sean-diddy-combs-hit-another-sexual-assault-case-former-male.htm ("Article regarding the Jones Complaint") (last visited May 13, 2025).

49.    Indeed, Music Times directly quoted one of the more salacious allegations from the Jones Complaint, as follows: "[Mr. Jones] also claimed that the harassment and assault included 'constant unsolicited and unauthorized groping and touching of his anus.'"[4]

### Music Times Published the Article that Falsely and Defamatorily Used Mr. Mosley's Image and Likeness

50.    Music Times published the Article online at approximately 11:14 AM EDT on May 15, 2024.

51.    Liz Foster is identified as the writer of the Article.

52.    Wendy Geller was identified as Editor-in-Chief for Music Times during the publication of this Article.

53.    The original URL for the Article was identified as followed:

https://www.musictimes.com/articles/103426/20240515/lil-rod-drops-key-names-diddy-sexual-assault-suit.htm

54.    When accessed today, the URL now redirects readers to the following message:

---

[4] *Id.*

10



55.    The Article, entitled "Lil Rod Drops Key Names From Diddy Sexual Assault Suit," prominently displays a clear and distinct image of Mr. Mosley attending the private funeral services of his friend and Atlanta hip-hop pioneer, Rico Wade.

56.    Mr. Mosley's image and likeness is the sole picture used in the Article.

57.    The Article purports to provide an update regarding the legal proceedings arising out of the Jones Complaint, namely the dismissal of several named defendants.

58.    However, there is no direct reference to Rodney Jones, Jr. by name in the Article.  Rather, the Article only refers to "Lil Rod" or "Rod" throughout the publication.

59.    Thus, to an average reader, the only logical conclusion is that the Article is about Mr. Mosley, whose image and likeness is on full display at the

beginning of the Article and the Article does not otherwise make any distinction with respect to its references to "Lil Rod" or "Rod."

60.    Moreover, among family, friends, colleagues, and acquaintances in his community, Mr. Mosley is affectionately known as "Lil Rod" or "Rod."

61.    Mr. Mosley, however, is **_not_** the "Lil Rod" or "Rod" described in the Article.

62.    The Article also summarizes the allegations set forth in the Jones Complaint, including claims that "Combs sexually harassed, drugged and threatened him throughout their time working together"; "'constant unsolicited and unauthorized groping and touching of his anus by Mr. Combs'"; being "'subjected to unwanted advances by associates of Diddy at his direction' and was also forced to have 'relations' with sex workers"; and witnessing Combs "'engaging in serious illegal activity' and hosting 'sex-tracking [sic] parties' filled with 'illegal drugs'" and underaged girls.

63.    The Article directly quotes allegations from the Jones Complaint.

64.    The Article critically maintains that "Rod is not dropping his case against Combs."

65.    Music Times published the false and defamatory Article without any investigation into the truth or falsity while contradictory information existed, was

known, and readily available at the time of the Article's publication, *i.e.* the Jones Complaint.

66.    Mr. Mosley has never filed a lawsuit against Combs nor made any such allegations involving him, Combs, sex trafficking, illegal activity, untoward sexual activities, and drugging individuals, including minors.

67.    This did not matter to Music Times, as it was more interested in publishing a salacious news story to attract readers to its website to read more about the explosive allegations against Combs.

68.    While many, if not all, of Combs's prior accusers were women, Music Times knew a news story involving a male accuser would attract even more readers despite also knowing Mr. Mosley was not the accuser identified in the Jones Complaint.

69.    Music Times was more interested in increasing its online readership and generating ad revenue than in maintaining journalistic integrity and fully investigating its claims prior to publishing the Article.

70.    As a result of its unreasonable and unlawful conduct, Music Times is liable to Mr. Mosley for actionable defamation and/or false light invasion of privacy for which it must be held legally accountable.

## COUNT I: CAUSE OF ACTION FOR DEFAMATION
### (*In the Alternative*)

71.    Mr. Mosley adopts and incorporates Paragraphs 1 through 70 as though the same were set forth herein in their entirety.

72.    To the extent any of the alleged statements and/or representations set forth in the Article are determined to not constitute false light invasion of privacy, such statements and/or representations are otherwise, and in the alternative, actionable for defamation.

### Music Times Published the Article about Mr. Mosley

73.    By using the sole image of Mr. Mosley and by referencing the subject of the Article as only "Lil Rod" or "Rod," Music Times conveyed a grossly inaccurate and false impression of Mr. Mosley.

74.    Indeed, the gist of the Article is false and defamatory *per se* in that it conveys to the average reader that Mr. Mosley was intimately involved in the Combs controversy, including claims of sexual violence, such as sex trafficking and drugging victims to facilitate violent sex acts towards men, women, and minors, illicit drug use, grooming, solicitation, and other untoward and illegal activities.

75.    The Article includes false and defamatory statements, when put in context of the Article as a whole, conveys a false and defamatory image of Mr. Mosley.

14

76.     First, the subject of the Article is only referred to as "Lil Rod" or "Rod" throughout.  Music Times made no distinction between "Lil Rod" or "Rod" Mosley pictured in the Article and "Lil Rod" or "Rod" Jones, Jr., who filed the Jones Complaint against Combs, as referenced in the Article.  This conveys to the average reader that the allegations of "Lil Rod" or "Rod" (Jones, Jr.) asserted against Combs are the allegations of "Lil Rod" or "Rod" (Mosley).

77.     Second, the sole image and likeness of Mr. Mosley was included between the title and body of the Article.  No other images were included in the Article despite several images of Mr. Jones being included in the Jones Complaint and on his publicly available social media pages.  This conveys to the average reader that Mr. Mosley pictured in the Article is the "Lil Rod" or "Rod" discussed in the Article.

78.     Thus, when put in the context of the entire Article as a whole, Music Times published false and defamatory statements of and concerning Mr. Mosley, including:

    (a) "Lil Rod" or "Rod" filed a lawsuit, alleging "Combs sexually harassed, drugged and threatened him throughout their time working together";

    (b) "Lil Rod" or "Rod" was subjected to "'constant unsolicited and unauthorized groping and touching of his anus by Mr. Combs'";

15

(c) "Lil Rod" or "Rod" was "'subjected to unwanted advances by associates of Diddy at his direction' and was also forced to have 'relations' with sex workers"; and

(d) "Lil Rod" or "Rod" witnessed Combs "'engaging in serious illegal activity' and hosting 'sex-tracking [sic] parties' filled with 'illegal drugs'" and underaged girls.

79.    The Article constitutes libel *per se* in that it directly and/or implicitly imputes actions to Mr. Mosley that injure his professional reputation.

80.    The Article constitutes libel *per se* in that it directly and/or implicitly imputes actions to Mr. Mosley that are defamatory and injurious to his reputation on its face and can be so understood without reference to any additional or extrinsic facts.

**Music Times Published the Article Negligently and With Actual Malice**

81.    By publishing the Article regarding the Jones Complaint months prior to the Article at issue here, Music Times evidenced a reckless disregard for truth or falsity when it published the Article that falsely and defamatorily used Mr. Mosley's image and likeness.

82.    Specifically, Music Times knowingly and purposely avoided the truth and ignored evidence establishing the falsity of its statements prior to the Article's publication.

83.    Further evidencing a reckless disregard for truth or falsity as to Music Times and considering the clear pictures of Mr. Jones's image and likeness

published in the Jones Complaint, the sole use of Mr. Mosley's image and likeness rendered the Article so inherently improbable on its face as to raise serious doubts about its truth.

84.    Further evidencing a reckless disregard for truth or falsity as to Music Times and considering the clear pictures of Mr. Jones's image and likeness published in the Jones Complaint, the sole use of Mr. Mosley's image and likeness rendered the Article so outrageous on its face as to raise serious doubts about its truth.

85.    Further evidencing a reckless disregard for truth or falsity and considering the clear pictures of Mr. Jones's image and likeness published in the Jones Complaint, the sole use of Mr. Mosley's image and likeness contradicted facts known and available to Music Times.

86.    Further evidencing a reckless disregard for truth or falsity and considering the clear pictures of Mr. Jones's image and likeness published in the Jones Complaint, Music Times published the Article that solely used Mr. Mosley's image and likeness without conducting even a cursory investigation, which failure constitutes gross negligence.

87.    On information and belief, Music Times had actual knowledge that the accusations against Mr. Mosley, coupled with the sole use of Mr. Mosley's image and likeness, were false prior to the Article's publication.

88.     Music Times financially benefitted from the Article.

89.     On December 16, 2024, Tiffany N. Watkins, Esq., on behalf of Mr. Mosley, sent a letter to Music Times wherein she informed Music Times that the Article was false and defamatory as to Mr. Mosley and placed him in a false light, including identifying Music Time's false and defamatory use of Mr. Mosley's image and likeness in connection with the allegations described herein.

90.     The letter was sent to the last available mailing address for Liz Foster, the author of the Article, and the email address identified by Music Times pursuant to its "Corrections Policy," namely corrections@musictimes.com.

91.     The Corrections Policy states, in pertinent part, as follows:

> When we make mistakes, it is our policy to correct our errors, large and small, as soon as we become aware of them — in text, picture captions and videos. Music Times takes complaints about editorial content seriously. If we ever need to update a story with new information, we'll make that clear with precise time stamps. If we need to make a substantive change to a story if something new comes to light, we'll be honest about why that happened and explain ourselves in a clearly labeled and dated note.

92.     Evidencing a continued reckless disregard for truth or falsity, Music Times failed and refused to publish a retraction and correction of the false and defamatory use of Mr. Mosley's image and likeness in the Article.

93.     Instead, and in an about face to its own Correction Policy, Music Times quietly deleted the Article without any specific correction or retraction

directed to Mr. Mosley, as previously demanded by counsel for Mr. Mosley and apparently volunteered by Music Times's own Correction Policy.

## Damages

94.    The false and defamatory Article was published to third parties and were, in fact, viewed by third parties in Georgia, in New York, across the United States, and around the world.

95.    The false and defamatory Article was of and concerning Mr. Mosley, as Mr. Mosley's image and likeness was the sole picture included in the Article and Music Times made no distinction between "Lil Rod" or "Rod" Mosley pictured in the Article and "Lil Rod" or "Rod" Jones, Jr., who filed the Jones Complaint against Combs, as referenced in the Article.

96.    As a direct and proximate result of the false and defamatory Article, Mr. Mosley's personal reputation and his professional reputation in the music industry has been permanently damaged.

97.    As a direct and proximate result of the false and defamatory Article, Mr. Mosley has suffered stress, emotional distress, embarrassment, humiliation, anger, and other mental pain and suffering.

98.    As a direct and proximate result of the false and defamatory Article, Mr. Mosley has suffered public hatred, contempt, scorn and ridicule.

99.    As a direct and proximate result of the false and defamatory Article, Mr. Mosley has withdrawn from social and community activities he previously enjoyed.

100.    As a direct and proximate result of the false and defamatory Article, Mr. Mosley has suffered special damages.

101.    Mr. Mosley has lost out on job opportunities within the music industry as a direct and proximate result of the false and defamatory Article, as no one in this industry, especially in the hip-hop community, desires to have any direct or remote connection to the Combs controversy.  This is especially true while Combs faces a high-profile federal criminal trial related to the controversy.

102.    As set forth above, the Article is defamatory and libelous *per se*, entitling Mr. Mosley to presumed damages.

103.    Music Times has not retracted or corrected its false and defamatory Article despite knowledge of its falsity.

104.    The conduct of Music Times demonstrates willful misconduct and an entire want of care that raises a conscious indifference to consequences.

105.    The false and defamatory Article was published with constitutional actual malice thereby entitling Mr. Mosley to an award of punitive damages.

106.   Mr. Mosley is also entitled to an award of punitive damages to punish Music Times for its unlawful conduct and to penalize and deter it from repeating such unlawful and egregious conduct.

## COUNT II: CAUSE OF ACTION FOR FALSE LIGHT INVASION OF PRIVACY
### (*In the Alternative*)

107.   Mr. Mosley adopts and incorporates Paragraphs 1 through 70 as though the same were set forth herein in their entirety.

108.   To the extent any of the alleged statements and/or representations set forth in the Article are determined to not constitute defamation, such statements and/or representations are otherwise, and in the alternative, actionable for false light invasion of privacy.

109.   The Article constitutes false publicity as to Mr. Mosley in that it depicts him as something or someone in which he is not.

110.   Specifically, the Article purports to detail the allegations relating to sexual misconduct involving Combs, as set forth in the Jones Complaint filed by Rodney "Lil Rod" Jones, Jr.

111.   Even if the Article accurately represents the allegations of Rodney "Lil Rod" Jones, Jr., Music Times placed Mr. Mosley in a false light by using his sole image in the Article.

112.    Although Mr. Mosley is affectionally known as "Lil Rod" or "Rod" among family, friends, colleagues, and acquaintances in his community, he is not the "Lil Rod" or "Rod" depicted in the Article.

113.    Associating Mr. Mosley with the allegations Rodney "Lil Rod" Jones, Jr. asserted against Combs would be highly offensive to a reasonable person.

114.    Music Times knowingly or recklessly published falsehoods about Mr. Mosley in the Article.

115.    For example, the Jones Complaint includes clear pictures of Mr. Jones's image and likeness—some with Combs—in several portions of the Jones Complaint.  *See* Jones Compl. at ¶¶ 17, 80, 114

116.    Mr. Jones is also known as @lilrodmadeit on social media platforms, such as Instagram, where Mr. Jones has garnered over 30,000 followers and where clear pictures of his image and likeness are on full display and publicly accessible to Music Times.

117.    As a direct and proximate result of the Article placing him in a false light, Mr. Mosley's personal reputation and his professional reputation in the music industry has been permanently damaged.

118.    As a direct and proximate result of the Article placing him in a false light, Mr. Mosley has suffered stress, emotional distress, embarrassment, humiliation, anger, and other mental pain and suffering.

119.   As a direct and proximate result of the Article placing him in a false light, Mr. Mosley has suffered public hatred, contempt, scorn and ridicule.

120.   As a direct and proximate result of the Article placing him in a false light, Mr. Mosley has withdrawn from social and community activities he previously enjoyed.

121.   Mr. Mosley has lost out on job opportunities within the music industry as a direct and proximate result of the Article placing him in a false light, as no one in this industry, especially in the hip-hop community, desires to have any direct or remote connection to the Combs controversy.  This is especially true while Combs faces a high-profile federal criminal trial related to the controversy.

122.   Music Times has not retracted or corrected its Article placing Mr. Mosley in a false light despite knowledge of its falsity.

123.   The conduct of Music Times demonstrates willful misconduct and an entire want of care that raises a conscious indifference to consequences.

124.   Mr. Mosley is also entitled to an award of punitive damages to punish Music Times for its unlawful conduct and to penalize and deter it from repeating such unlawful and egregious conduct.

## COUNT III: ATTORNEY'S FEES AND EXPENSES

125.   Mr. Mosley adopts and incorporates Paragraphs 1 through 70 as though the same were set forth herein in their entirety.

126.    Pursuant to O.C.G.A. § 13−6−11, Music Times has acted in bad faith, has been stubbornly litigious, and/or has caused Mr. Mosley unnecessary trouble and expense, for which Mr. Mosley is entitled to recover his expenses of litigation, including reasonable attorney's fees and expenses, from Music Times.

127.    Because Music Times has failed and refused to publish a retraction and correction of the false and defamatory use of Mr. Mosley's image and likeness in the Article, as well as compensate Mr. Mosley for the damage the false and defamatory Article has caused, Mr. Mosley was forced to incur attorney's fees and expenses in an effort to resolve this matter and Mr. Mosley will be forced to continue to incur additional attorney's fees and expenses during the pendency of this litigation unless and until this matter is resolved.

**WHEREFORE,** Plaintiff Roderick D. Mosley prays for a judgment, in his favor, and against Defendant Music Times, LLC, as follows:

(a) Awarding Plaintiff compensatory damages in an amount to be determined and presently believed to be no less than Seven Hundred Thousand Dollars ($700,000.00);

(b) Awarding Plaintiff his recoverable costs and disbursements;

(c) Awarding Plaintiff his reasonable attorney's fees associated with this litigation, pursuant to O.C.G.A. § 13−6−11;

(d) Awarding Plaintiff punitive damages, pursuant to O.C.G.A. §

51–12–5.1, in an amount not less than One Million and Four

Hundred Thousand Dollars ($1,400,000.00); and

(e) Granting Plaintiff such other relief as the Court deems equitable,

just, and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury as to all claims to which it is entitled. This request is without prejudice to, or waiver of, Plaintiff's right to move for judgment on all issues that may be decided by the Court.

Respectfully submitted, this __13th__ day of May 2025.

FIRESTONE GREENBERGER PLLC

/s/ Jordan Greenberger
Jordan Greenberger (JG-0316)
104 West 40th Street, 4th Floor
New York, New York 10018
Telephone: 212-597-2255
jg@firegreenlaw.com

EVANS BOWERS LLC

/s/ Tiffany N. Watkins
Stacey G. Evans
Georgia Bar No. 298555
*Admission pro hac vice forthcoming*
Tiffany N. Watkins
Georgia Bar No. 228805
*Admission pro hac vice forthcoming*
729 Piedmont Road, NE
Atlanta, Georgia 30308
Telephone: 404-850-6750
Facsimile:  404-850-6748
sevans@evansbowers.com
twatkins@evansbowers.com

DURHAM LAW GROUP, P.C.

/s/ Bryce V. Durham

Bryce V. Durham
Georgia Bar No. 101054
*Admission pro hac vice forthcoming*
191 Peachtree Street, NE, Suite 2510
Atlanta, Georgia 30303
Telephone: 404-845-3434
Facsimile: 404-419-7838
bdurham@durhamlawgrouppc.com

*Attorneys for Plaintiff Roderick D. Mosley*